UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-477-GWU

LONNIE RUSS,                                                              PLAINTIFF,

VS.                 **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Lonnie Russ, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of "residuals status post ankle fracture," loss of vision in the right eye, chronic obstructive and mild restrictive pulmonary disease, Diabetes Mellitus Type II, an anxiety disorder, and a history of substance abuse disorder. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Russ retained the residual functional capacity to perform certain light level jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 17-20). The Appeals Council declined to review, and this action followed.

The ALJ ultimately concluded that Mr. Russ had a functional capacity to perform "light" level exertion, and was able to sit, stand, and walk up to six hours each in an eight hour day, and also had the following non-exertional restrictions. (Tr. 17). He: (1) was unable to perform jobs prohibited by blindness in one eye; (2) could

06-477 Russ

occasionally climb, stoop, crouch, and crawl; (3) had a "limited but satisfactory" ability to maintain attention and concentration; and (4) would be restricted to low stress jobs. (Id.). Given a series of hypothetical questions reflecting most of these restrictions at the administrative hearing, the VE testified that such a person could perform the jobs of janitor and maintenance worker, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 232-5).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by the evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to blindness in the right eye, diabetes, breathing problems, broken bones in his neck and ankle, high cholesterol, headaches, bad nerves, and memory loss. (Tr. 79). The plaintiff testified that his right ankle would swell and become painful if he walked or stood on it for a long period of time. (Tr. 228). He had some neck pain, and had lost most of the use of his left hand. (Tr. 225, 227). His doctor had told him he had a pinched nerve. (Tr. 222). Additionally, he was blind in his right eye, and was having more and more problems with his other eye. (Tr. 226). He was taking medication from his family doctor for depression. (Tr. 224). Mr. Russ described having low energy, crying spells, poor concentration, and forgetfulness, as well as visual hallucinations, although he was embarrassed to talk to his doctor about this issue. (Tr. 230-1). He

06-477 Russ

testified that he had attended school through the sixth grade but could not read or write. (Tr. 221).

The plaintiff points out on appeal that, while the ALJ determined that he had a "marginal" education, this was not consistent with his allegation of illiteracy. (Tr. 19). School records, which <u>were</u> cited by the ALJ, showed that the plaintiff failed sixth grade and repeated approximately one-half year before dropping out of school. (Tr. 136). His grades from third grade on were never higher than D, with most of his scores in the last three semesters at the failing level. (Id.). The plaintiff points to an achievement test, not cited by the ALJ, given in May, 1972, at approximately age 12, that showed a 2.2 grade reading level although the plaintiff was in the sixth grade at the time. (Id.). The plaintiff points out that a numerical grade level can be used as a basis to determine a claimant's educational level, unless there is specific achievement testing to contradict it. 20 C.F.R. Section 416.964(b). The Commissioner contends that the school records do not justify a finding of illiteracy, citing <u>Skinner v. Secretary of Health and Human Services</u>, 902 F.2d 447, 449-50 (6th Cir. 1990). However, the court in <u>Skinner</u> accepted evidence that a person with a third grade reading ability or less was functionally illiterate. Therefore, if the plaintiff established that his reading level was at no more than a second grade level, a finding of "marginal" education would have been improper.

9

06-477 Russ

In the present case, there was no current evidence of achievement testing as an adult, and the only mental status examiner, Dr. Kevin Eggerman, a psychiatrist, reported that Mr. Russ had asserted that he was able to do basic reading, writing, and arithmetic. (Tr. 173). In the absence of more recent achievement testing, the ALJ could have relied on the plaintiff's level of formal education given his apparently contradictory statements at the administrative hearing and to Dr. Eggerman.[1]

The plaintiff argues that it was improper to adopt the residual functional capacity from a 1999 ALJ decision on a prior application because there was evidence that his vision had deteriorated. The 1999 decision noted 20/200 vision on the right and 20/25 vision on the left without correction (Tr. 40), while the only current eye examination, conducted by Dr. Bobby J. Kidd on January 25, 2005, showed that Mr. Russ had no vision in his right eye and 20/50 vision in his left eye. (Tr. 141). However, the hypothetical restriction in both cases was that the plaintiff could only see out of one eye. As the defendant suggests, there is no evidence that the vision in his other eye could not have been corrected with glasses, nor did any medical source place specific vision restrictions that were greater than those imposed in the hypothetical question.

---

[1] In a previous application denied by an ALJ in a decision dated May 24, 1999 it was recorded that the plaintiff had also asserted illiteracy in his testimony, but had reported to a psychological examiner that he was able to read a newspaper. (Tr. 43). The ALJ's finding the in the final, prior decision was of a "marginal" education. (Id.).

06-477  Russ


The plaintiff's primary argument is that it was error not to accept functional restrictions assessed by his treating family physician, Dr. James R. West, in February, 2006.  Dr. West restricted his patient to lifting less than 10 pounds, less than full-time sitting and standing, "never" performing any postural activities, having restrictions on reaching, handling, feeling, pushing, pulling, seeing, and working around heights, moving machinery, temperature extremes, humidity, and vibration.  (Tr. 205-11).  The reasons given for these restrictions included osteoarthritis, low back pain, diabetic peripheral neuropathy, decreased sensation and strength on physical examination, and legal blindness in one eye, along with an x-ray showing degenerative arthritis.  (Tr. 204-7).  Clearly, these restrictions would be totally disabling if they are binding.  Dr. West also opined that his patient would have a "seriously limited but not precluded" ability to deal with the pubic, deal with work stresses, maintain attention and concentration, understand, remember, and carry out detailed and complex job instructions, and demonstrate reliability.  (Tr. 209-11).

The only reason given by the ALJ for rejecting the psychological portion of the restrictions was that Dr. West was not a mental health specialist.  (Tr. 218).  As the Sixth Circuit noted in <u>Wilson v. Commissioner of Social Security</u>, 378 F.2d 541 (6th Cir. 2004), the Commissioner is always required to "give good reasons" for the weight given a treating source opinion.  <u>Id.</u> at 544, citing 20 C.F.R 404.1527(d)(2).  A family physician is qualified to give an opinion regarding mental disorders,

06-477 Russ

especially where, as here, he is treating a patient with medication. The implication of the ALJ's statement is that a general practitioner's opinion regarding mental limitations may be disregarded without further explanation because he is not a specialist. Otherwise, it is unclear how the ALJ weighed the evidence relating to the plaintiff's mental impairments. The ALJ went on to state that "considered together with the claimant's testimony, I have determined that the claimant is limited to low stress work and have incorporate[d] the prior hearing decision finding of a limited but satisfactory ability to maintain attention and concentration." (Tr. 19). Previously, the ALJ had briefly summarized the report of Dr. Kevin Eggerman, a one-time psychiatric examiner. This summary was that Dr. Eggerman had diagnosed alcohol abuse in sustained full remission and a generalized anxiety disorder, with a Global Assessment of Functioning (GAF) score of 55-60, consistent with "moderate" limitations. (Tr. 16). However, the ALJ failed to state, or even hint, if he was accepting or rejecting Eggerman's report. If he were accepting it, and the plaintiff had "moderate" limitations in his overall functioning as suggested by the ALJ's summary, such restriction would also appear to be inconsistent with the ALJ's conclusions. For all of these reasons, the mental limitations are not supported by substantial evidence.

The ALJ also rejected Dr. West's physical conclusions for several reasons, one of which was that he had treated Mr. Russ only "intermittently since October

2004." However, a physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition." Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007) (citation omitted). Dr. West treated Mr. Russ at a hospitalization for acute bronchitis in October, 2004, and saw him on four more occasions over the next 13 months for such conditions as diabetes, passing bright red blood per rectum (for which he was referred to a specialist), chronic obstructive pulmonary disease, a fractured cervical spine, and insomnia. (Tr. 165-9, 201). Given the plaintiff's limited financial resources (Tr. 227), this level of treatment does not appear unusual. The ALJ asserted that Dr. West had only recently diagnosed diabetic peripheral neuropathy "based on subjective reports" and there had been no electrodiagnostic studies. (Tr. 19). The ALJ accepted, however, that there was a history of a cervical fracture (Tr. 163-4), mild degenerative cervical findings, and decreased sensation of the left lower extremity but found "no evidence" to warrant a departure from the prior hearing decision assessment of light exertional activity. (Tr. 19).

The only examining source to give an opinion contrary to Dr. West was Dr. Kidd, who evaluated the plaintiff on one occasion and apparently had no records to review, although a pulmonary function test was performed at the time of his examination. (Tr. 140, 144-7). On the day of his one-time examination, Dr. Kidd found no abnormalities in the plaintiff's gait and no musculoskeletal abnormalities

06-477  Russ

other than a reduced grip in the left hand. (Tr. 141-4). He apparently noticed nothing unusual about the plaintiff's right ankle, although a previous examiner had noted a scar over the lateral malleolus with an area of induration and erythema. (Tr. 40). By contrast, Dr. West was familiar with the plaintiff's cervical CT scan and x-ray and had actually diagnosed radiculopathy (Tr. 168) as well as describing difficulty palpating the pulses in the plaintiff's feet (Tr. 167), and, later, decreased sensation in both legs. (Tr. 201). Thus, there was objective evidence to support the opinion of the treating source, in addition to reason to question the thoroughness of Dr. Kidd's one-time examination. The ALJ should, at a minimum, have obtained evidence from a medical adviser with access to all of the evidence.

The decision will be remanded for further consideration.

This the 31st day of July, 2007.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**